You all look ready to go. I know you're familiar with our lighting system. I'm going to make some effort to enforce it so to the extent you see the red light on and you can wind up, that'd be great. With that, I'll call the first case of Andrea Gogel v. Kia Motors. Good morning. Good morning. You can proceed. Okay. May it please the court, my name is Meredith Carter and I along with co-counsel Lisa Lambert represent Andrea Gogel and King is here on behalf of the EEOC. She will be addressing the issues of vote for and honest good faith belief. We are here today because Kia fired Ms. Gogel for engaging in protected activity, admitted as much, but nevertheless, the lower court granted summary judgment in its favor. Ms. Gogel was team relations manager at Kia. She lodged several internal discrimination complaints based on gender, national origin, and race during her employment. When those concerns were not addressed, she filed a charge with the EEOC on November 10, 2010 for national origin and gender. Kia received the charges on November 22nd. On November 30th, Kia filed its position statement. Then three days later on to sign a document that had her waive her rights. Once she agreed to sign the document, she then- It wasn't one part of that document, though. She was, part of her job duties were helping the company avoid having other employees make complaints. That is, her job was to try to work with employees, try to settle things in a non-litigated fashion, and they were concerned that given her own complaints, she might be going out and soliciting complaints. Do you see anything untoward about them asking her not to violate an essential job duty, which is, we want to have as few complaints as possible, instead of chaining up complaints? Do you have any problem with that being a condition of the agreement? Your Honor, I would say that her job duties were not preventing litigation. Her job duties were investigation of internal complaints that may occur and investigation of EEOC charges at the direction of legal. You're saying it's, well, let's say this. If you have a lawyer in a company and the lawyer's sole, internal counsel's sole duty is to deal with employee complaints and to try to avoid, obviously employers want to avoid having people file legal actions against them, and you find out that the lawyer actually, instead of doing that, is going out and trying to encourage employees to file complaints, this is somewhat akin to that. You think that that lawyer and your client have a right to go out and try to solicit people to sue the company if they choose to do so? Your Honor, I would say that in this situation, that did not apply, then that Ms. Gogol was not out soliciting anyone. I would say... Okay, that's a different question, but I first want to see if we're on the same page. Your Honor, I would say that anyone that is going out and soliciting and being disruptive in the workplace is part of the balancing test that addresses the opposition cause, but not the participation cause. My client was participating in protected activity, and that a company does have an interest in preventing lawsuits from being filed, but I would argue that in this situation, that that was not Ms. Gogol's job duties to do so. Counsel, what precisely was the protected activity to which you refer? Your Honor, my client filed an EEOC charge on November 10th, and then Mr. Jackson had a mistaken belief that my client had assisted another employee with filing a charge of discrimination, which is covered under the participation cause of Title VII. What is the specific activity of your client that you are asking us to consider? The specific activity of my client was that... That would be protected under the protected activity concept? That she filed a charge, and she was allowed to pursue her charge, and that if she had assisted Ms. Ledbetter in the pursuit of her charge, that that was also protected. All right. So with respect to her charge, that's certainly understandable, but with respect to the charge for Ms. Ledbetter, I'm not sure you've quite responded to Judge Carnes' concern about whether that would fit within the same concept. Yes, Your Honor. We argue that it would under the participation clause of the EEOC. So after my client signed the December 3rd document, she was allowed to come back to work. On December 10th, Diana Ledbetter filed a charge of discrimination against Kia. Kia received that charge on December 23rd, 2010. On December 24th, 2010, the plant shut down for two weeks and reopened on January the 4th. On January the 7th, 2011, Randy Jackson called Ms. Gogel in from vacation to ask her about Ms. Ledbetter's EEOC charge. During that meeting, my client denied knowing that Ms. Ledbetter was filing a charge, but she was accused of collusion with Ms. Ledbetter, and she was accused of violating the December 3rd agreement during that time, and they promptly suspended her for a second time. Then she was terminated on January 19th, 2011. Under Title VII, Kia admits that terminating an employee for participating in protected activity would be direct evidence of retaliation except for Ms. Gogel's job duties. We argue that a person's job within a company should not be consideration for whether or not they are protected under Title VII as the statute covers any employee, any member, any manner of participation, and that to do so would be, and to do so would rewrite the statute as it is. Um, Ms. Gogel was always at every time following policy of Kia. When she lodged her internal complaints, she was not disruptive. She followed procedures. Even Mr. Jackson testified that Ms. Gogel never did anything inappropriate at work and was always very professional. The cases relied upon by— one of their procedures was if you're a high-level human resources type official such as she was, you don't instigate complaints among other employees. That's where the rub is here, correct? Well, I would say the rub would be that there was never any evidence she was instigating other employees to file complaints of discrimination and that when the lower court made the decision to believe Mr. Jackson over Ms. Gogel, that it was a credibility issue that should have been decided by a jury. You mean they have to stop right then and there when you've got this internal, very deep internal problem and the employer doesn't have the right to say, I've looked at this and I believe Ms. Gogel, you are doing that which you should not be doing. Let's just stop everything and have a jury trial on it. That's what the employer is supposed to do? No, Your Honor. I would say that the employee should at least engage in an objective, good faith investigation before automatically assuming when they receive an EEOC charge that someone is recruiting others to go against the company. I would say that if you're going to argue that against one of your employees that you should ask individuals that were allegedly involved instead of going by a fax header and that that was the issue there and I would argue that Ms. Gogel's job was not preventing lawsuits. Ms. Gogel at all times had told legal and Mr. Jackson about any complaints of EEO violations that she had reported them, that it was up to Mr. Jackson and legal to handle those complaints and to, you know, I would argue that it was legal's job to prevent lawsuits. Your time is up, so we'll hear from Amicus and we'll hear from you again on rebuttal, obviously. Okay, thank you. May it please the Court, Anne King on behalf of Amicus U.S. Equal Employment Opportunity Commission. I would just like to start by addressing a question that came up earlier about Ms. Gogel's protected activity. Of course, one manner of protected activity is her charge, which is participation under the anti-retaliation provision. Kia's belief that she assisted Ledbetter with filing a charge is also participation because the statute refers to assisting in making a charge as participation and this Court recognized in total systems that activities related to filing a formal charge may be protected participation. Alternatively, it would also qualify as opposition under the Crawford decision from the Supreme Court, which recognizes that assisting another employee may be protected opposition. As to the question— And what is your source for the assisting and filing being protected? That, Your Honor, is 42 U.S.C. 2000e3 and that refers to making a charge and assisting as falling under the participation clause. As for the causal link between Gogel's participation and her termination, counsel already described some of the events that trace a causal link between Gogel's charge filing and her termination. Soon after Kia learned of the charge, she was presented with the agreement that was retaliatory in nature because it prohibited her from making negative statements about Kia or discussing her complaint with team members. Those prohibitions would violate Title VII to the extent that they would prevent her from engaging in opposition, which would be protected under the statute. Soon at the same time the agreement was presented, Ms. Gogel was suspended, the first discipline she'd ever received, and then only two months after her termination— I'm sorry, after her charge filing, Kia terminated her. There's also a strong causal link— That would be part of her perceived claim, the claim that she was perceived to be aiding in protective activity. Oh, to clarify, Your Honor, that would go to the causal link between Gogel's charge filing and her termination. The pattern of retaliation that occurred soon after Kia received her charge and that culminated in her termination. And you're saying that applies to both her gender claim and her retaliation claim? We addressed only the retaliation claim here. Okay. And as for the causal link between her perceived protected activity and her termination, that would be assisting—supposedly assisting Ladobetter with the charge. In that case, we have an admission from Kia that that was the basis for Gogel's termination. The decision-maker testified that he fired her because he thought she encouraged and solicited other team members. Her termination letters had the same reference, Ladobetter's charge. So there's a direct causal link. But let's assume for a minute that there's a difference of opinion. You think that she had every right to instigate and encourage other people to file complaints. Defendants don't think so. But let me ask you this. Let's assume then that you're right in that position. Well, let's assume then first as to her complaint. Let me go back a bit. After her claim is filed and they talk to her and they have this agreement, they don't fire her immediately. Instead, they give her a bonus and a vacation. And do you see any problems with that in terms of showing that they weren't going to fire her based on her claim? In fact, that their firing was based on what they perceived as the instigation of other people to file complaints? Your Honor, I think that, you know, again, it's a jury question. So even though a jury maybe would conclude that Kia's correct, they might also believe Gogel's version of the facts. And although she's terminated January 19th and she receives the agreement December 3rd, the plan is closed for a period of time during for the holidays. And she's actually suspended again on January 7th. So that is a little bit more than a month after the agreement with the plant closure. So the temporal proximity is actually quite close in that case. And I see my time is expiring. So thank you, Your Honors. Thank you. Good morning. Good morning, Your Honor. May it please the Court. My name is Jonathan Martin and along with Co-Counsel Joe Murray, we represent Kia Motors Manufacturing Georgia, the employer defendant in this matter. We respectfully ask that this Court affirm the ruling of the United States District Court for the Northern District of Georgia that Kia did not discriminate or retaliate against Andrea Gogel when it terminated her employment. We do so for three reasons. First of all, the manager rule that is relied upon by both the United States Equal Employment Opportunity Commission as well as Plaintiff Gogel in this case has no application to this matter. The manager rule stands for the basic proposition that if a human resources professional is tasked with identifying and bringing forth discrimination, then in so doing, carrying out their job duties, they are not engaged in protected activity. That has no application in this case. It is our position that she was not terminated for doing her job. Rather, she was terminated for not doing her job. As a result, all of the analysis and the briefing that involves the manager rule is inapplicable. Can I ask you, you say she was fired for not doing her job. In the termination letter, you say you referred to Diane Ledbetter's, Diana Ledbetter's reference to her discrimination claim not being investigated. I mean, that's in reference to her claim about the president having an inappropriate relationship with an employee. Mr. Ahn and Ms. Morris. Your Honor, that is in reference to the perception that the employer had that she was abusing her position of trust rather than. No, the sentence about Diane Ledbetter filed a charge of, part of this charge alludes to claims that the company, including human resources, did not properly investigate her complaint. Yes, ma'am. So, in that, that's what Ledbetter was complaining about, right? That human resources had failed to investigate her complaint against Mr. Ahn and Ms. Morris. That's correct, Your Honor. Okay. Okay, but wasn't, wasn't Ms. Gogol instructed not to investigate that? I mean, that was her testimony anyway. Her testimony was that she was, well, her testimony was that she was initially told by Randy Jackson not to investigate. And then she was told by Kevin Kim to conduct a secret investigation. And he later told her to discontinue that investigation. Stop the investigation. Do not gather any more information. Destroy all information related to anything I had done. So, it seems, so on the one hand, her supervisor's instructing her not to investigate. And then on the other, in her termination letter, she's, she's being told she's terminated for not investigating. So, which is it? Well, she was terminated for not working with Diana Ledbetter to try to avoid litigation. That was the job duty. That's another sentence. But, you know, one of the, one of the reasons given in, my, you know, my job is just to try to get your, your case, you know, understand your case. And I don't understand that. The instruction to her, I mean, in her termination letter saying you didn't investigate. And then when you follow that down, she was told not to investigate. So, I mean, was that really the reason she was fired? One of the reasons she was fired? And if so, how do you fire her for doing something she was instructed to do? Well, Your Honor, we would respectfully submit that Diana Ledbetter had a number of complaints about things that were going on at the company. And over the course of a number of years, she went to Ms. Gogol, who was the head of team relations, in an effort to try to resolve and address those complaints. It's our position that is part of investigating. And the uncontested testimony from Ms. Gogol is that she was tasked with investigating and then making recommendations to Randy Jackson, the key decision maker. And that was part of the problem, is that Ms. Gogol was not providing adequate information. And the perception was that she was providing biased information because she had lost, she had begun to put her self-interest ahead of the corporate interest, which was a problem for somebody in a confidential position of trust. Well, you heard counsel from the EEOC make it clear that assisting Ms. Ledbetter in her charge was protected activity under 2000 E3. What's your response? Your Honor, my response to that is there's precedent in this circuit, and I would invite the Court's attention to Whatley v. Metro Atlanta Transit Authority for the proposition that let's assume that she was engaging in her own, she was complaining on her own behalf. In that case, you had a plaintiff who was complaining on her own behalf, but she was doing it in such a disruptive manner that she lost her protections. So we would respectfully submit that the balancing test that was used by the magistrate judge, as well as used by the district judge, was the appropriate analysis and it was appropriately applied in this case. But don't you have evidence here, Mr. Jackson said Ms. Gogol never was disruptive. I mean, just in terms of, you know, disputes of fact and the record. Your Honor, what is uncontested in the record is the perception that she was being disruptive. And what I mean by that is this, if you look at Ms. Gogol's... But not by Mr. Jackson, right? It was Mr. Jackson's perception. He lost confidence in her abilities to be objective based on the facts that he was aware of. But he didn't say she was disruptive. We would submit... She wasn't, didn't... I mean, that was my understanding of his testimony. Well, we would submit that certainly encouraging employees to participate in her lawsuit would be disruptive activity. And that certainly is, you know, that's actually consistent with the law in the Jones case, Jones v. Flagship, where they said in that case that the employee's advocacy on her own behalf and the exact quote is, Jones' right to express her grievances and promote her own welfare did not depend on others joining her lawsuit. Likewise, we would submit that Ms. Gogol's right to express her grievances and promote her welfare. That's a Fifth Circuit case, right? That is, and it's been cited with approval in this Court's decisions in Rollins.  All right. Um, well, let's talk... So, with regard to her perceived protected activity, I mean, the next reason given in our termination letter is that she, you know, didn't discourage Ms. Ledbetter from, you know, going external as opposed to internal or something to that effect was in the termination letter. And now we've got declarations from both parties that that was not true. So, what about this perceived protected activity claim? Yes, Your Honor. I think that's addressed by this Court's precedent in Cedars v. Elrod, where the Court has held that it is not whether or not the employee is actually engaging in misconduct that governs. It is whether the employer reasonably believed that the employee has engaged in misconduct. And that's where I think the facts here are instructive, Your Honor. You know, Ms. Gogol testified in her deposition. You know, the counsel argues that the magistrate judge and the district judge made impermissible credibility determinations. But even if one discounts the testimony of Randy Jackson, the testimony of the 30B6 witness, and the testimony of Ms. Gogol's subordinate, and goes directly to how she describes her job, she described her job as conducting EEO investigations under the direction of legal. And that if they involved management, she had to work closely with the decision maker. And we would invite the Court's attention to her deposition testimony, which is at the docket at 117 and pages 100 through 106, where she describes her duties. She said that she generally provided the information and the facts discovered as well as making recommendations to Mr. Jackson when EEO investigations involved both rank-and-file employees as well as management employees. Now, Your Honor, against that background, we need to look at the facts that Mr. Jackson was confronted with. She filed an EEOC charge, and that was very much her right. However, what was not her right was to take her special position of trust and then begin to gather evidence and attempt to coerce or encourage employees, rather than using the company's processes, to step outside and join her lawsuit. And there were three red flags that Mr. Jackson had within a month. Red flag number one, she filed her EEOC charge. Within a week of the position statement being submitted, um, as Judge Carnes pointed out, they asked her to sign a document. The document did not ask her to give up any of her rights. This case is distinguishable from the circuit's precedent in Goldsmith, where the employee was asked to waive his right to a jury trial. The statement itself that was given only reinforced her job duties. You cannot use your confidential position of trust to have access to and gather documents that are otherwise unavailable to pursue your own claims. She refused to sign that. That would give any manager pause. Well, she, she, she delayed it, right? I mean, she did. She delayed it. But the initial refusal. She had a lawyer. She said, I don't want to sign this without talking to my lawyer. And then she signed it. Yes, Your Honor. So, I mean, that certainly, it would give most managers pause her refusal to acknowledge her job responsibilities. But there were two other independent things that occurred within 30 days. Three weeks later, there was an EEOC charge that was received from Diana Ledbetter. What's significant about her charge is that it came from the fax signature of Ms. Goegle's own attorneys. Of all of the lawyers in Georgia, and they're right on the border in Alabama, the coincidence that Ms. Goegle, this Ms. Ledbetter had complained and gone to Ms. Goegle for years, and within a matter of weeks of Ms. Goegle filing her EEOC charge, all of a sudden, this other employee files another EEOC charge using the same exact law firm. That's the second red flag that gave him pause. I think more importantly, you know, as Ms. Carter described the sequence of events, the morning after winter shutdown, one of Ms. Goegle's subordinates came to Randy Jackson first thing in the morning. You know, in so doing, whistleblowing on his boss, he put his own job in jeopardy. And he said, you know, Mr. Jackson, I want you to know that Ms. Goegle is the ringleader and trying to attempt to get employees to join her lawsuit. In fact, she has already gotten to Diana Ledbetter. So we have three independent things that caused him to cast doubt on her objectivity. And that's really what this case boils down to. Could she be entrusted to be objective in investigating EEO charges? Counsel, why isn't this a jury question? Your Honor, the reason that I would submit it is not a jury question is because when you look at the McDonnell-Douglas burden shifting analysis, there's no question, as counsel for the commission argued, that she can make out a prima facie case based on temporal proximity alone. But the company articulated a legitimate, non-retaliatory reason, which is their perception that she was engaged in soliciting employees. And as a result, the burden shifts back to the plaintiff to show pretext. This is a simple legal analysis rather than a jury question we would respectfully submit. But I guess, you know, just to follow up on Judge O'Scanlan's question, I mean, the idea is that there's evidence on both sides, you know. I mean, whatever you perceived her to be doing, she says that's her right to do it. And I guess your response to that is, yeah, but the way she went about it was disruptive. And, you know, wouldn't that be, she says, no, I wasn't disruptive. And there seems to be evidence on both sides of that. I mean, why isn't that a jury question? Well, Your Honor, what we would submit is this, and that goes back to her MeToo evidence. You know, the law of the circuit has long been that Title VII's protections are not absolute and that an employee can be so disruptive in carrying out their opposition that the protected activity so interferes with the performance of his job duties that it renders him ineffective for the position for which he was employed. I noticed you were saying to the Fifth Circuit case on that. But we, as you mentioned, we have our own case on Rollins. But, I mean, to me, the evidence in Rollins was, Ms. Rollins was much more disruptive than what you're saying Ms. Gogel was, right? So how does Rollins help us here? Your Honor, I would submit that probably a better case that is almost on all fours is this Court's decision in Ham. In the Ham decision, what we had was an employee who was not the ultimate decision maker. However, according to the case, her duties included investigating instances of alleged discrimination, filing written reports with her findings with the appropriate supervisory personnel, and recommending appropriate action for their final approval and disapproval. That is virtually identical with the responsibilities that Ms. Gogel was entrusted, which is why it was important for the company to have her in a position where they could trust her to be objective and not put her own self-interest ahead of the interests of the company. But, I mean, again, you know, Ms. Ham, according to the opinion, gave internal investigative reports to the campus newspaper. I mean, it's just not what we have here, is it? Well, what we have here, Your Honor, are employees who were encouraged to go to team complaints that they had. And the head of that department, the boss of the department, appeared to be encouraging those individuals to go outside the company and file a lawsuit against the company. Yeah, I understand your argument. Thank you. All right. I see my time is up. Thank you. Thank you. Your Honors, I just want to start by that December 3rd document. It was not just about her job duties. It was specifically pertaining to her EEOC charge that she would not engage in futherance of that charge, which would prevent her from being able to assist the EEOC in the investigation of the charge. It wasn't just about her job duties. It says, I will not seek access to any files or documents that relate in any way to the merits of my claim or similar claims against KIA. Yes, Your Honor. And did you have, sorry, did you have a question? Oh, okay. But here we're having shifting reasons. Again, during the 30B-6, KIA testified that it was not about performance and it was only about the alleged perceived perception that she was soliciting other members to file charges. I would submit to the court that regarding the investigation of President Ahn and Ms. and not only was she told not to investigate it, but that Ms. Ledbetter started complaining to Bob Tyler, which was Ms. Gogol's superior. And Mr. Tyler, at that point before Ms. Ledbetter filed her charge, reported again to Randy Jackson and illegal that Ms. Ledbetter was still complaining about the inappropriate relationship with Ahn and Morris. During the meeting on January 7th with Ms. Gogol, Ms. Gogol told Randy Jackson and KIA that she did not know that Ms. Ledbetter had not complained about any gender discrimination and that she didn't know she was going to file a charge. Yeah, I just wanted to be sure we were kind of all on the same page that that was what that reference was to, that in the termination letter to Ms. Gogol where it says you didn't investigate Ms. or Ms. Ledbetter's complaining that HR didn't investigate her complaints. That's what that's what that was a reference to. And it sounds like everybody agrees that that's what that was about. Yeah, yes, Your Honor. And firing someone in retaliation for an actual or perceived protected conduct is not a legitimate non-discriminatory reason to terminate someone. The subordinate that Mr. Martin references, it's the other way around. Randy Jackson came to him and said, we've already suspended Bob Tyler for filing his charge. If you can give us any more information on Ms. Gogol, we'll look at doing the same. And promptly after her termination, Mr. Williams was giving her job. These are all issues of fact that a jury should be able to hear. You see the declaration from Ms. Ledbetter who adamantly denies that she was solicited for anything and that Ms. Gogol did not assist her. And Mr. Jackson, we propose did not do an independent objective investigation. Counsel, may I just ask, you heard Mr. Martin cite us to the Ham case. Why doesn't Ham control this case? Your Honor, in that Ham case, as Judge Martin correctly pointed out, she was posting the internal complaints in a newspaper. Again, Mr. Jackson testified that nothing Andrea did during her employment was improper. And in the Ham case, it was about opposition more so than participation. And we are arguing here that if there is a balancing test, it only. But there was some opposition here, was there not? Yes, and participation by filing her own charge and allegedly assisting another employee with opposition. Thank you. Thank you. Thank you. We appreciate the argument. Well done. And.